[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15777
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00076-CEH-TBM-2

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

versus

HERALDO MOJICA, JR.,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 26, 2018)

Before MARTIN, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Heraldo Mojica appeals his 120-month sentence for conspiracy to possess and possession of 500 grams or more of methamphetamine with intent to distribute.  At sentencing, the district court found Mr. Mojica was an organizer, leader, manager, or supervisor in his criminal offense, thereby enhancing his sentence under U.S.S.G. § 3B1.1 and making him ineligible to receive "safety-valve" relief under U.S.S.G. § 5C1.2.  We affirm Mr. Mojica's sentence.

# I

In January of 2017, federal agents received information from a confidential source ("CS") that Mr. Mojica was engaged in the distribution of methamphetamine.  On January 20, 2017, Mr. Mojica, his co-conspirator Miguel Sandoval, and others met with the CS at a restaurant.  During the meeting, Mr. Mojica agreed to sell methamphetamine to the CS later in the week.  Working alongside federal agents, the CS later contacted Mr. Mojica to arrange the sale, and Mr. Mojica agreed to complete the exchange at a hardware store on January 25, 2017.  Mr. Mojica informed the CS that the other person present at the restaurant meeting, Mr. Sandoval, would also attend the exchange.

On January 25, 2017, federal agents observed Mr. Sandoval walk through the hardware store parking lot, approach Mr. Mojica—who was sitting in a separate vehicle—and hand Mr. Mojica a package wrapped in gym shorts.  The

2

agents approached Mr. Mojica and Mr. Sandoval and found 994 grams of methamphetamine inside the package.

Mr. Mojica and Mr. Sandoval were arrested and indicted for conspiracy to possess 500 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count I), and possession of 500 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count II). Mr. Mojica pled guilty to both counts.

At the sentencing hearing, Mr. Sandoval testified that Mr. Mojica instructed him on when, where, and how to make the exchange and what kind of car the buyer would be in. Mr. Sandoval also testified that Mr. Mojica observed him attempt to make the exchange, and that, when Mr. Sandoval could not locate the car of the buyer, Mr. Mojica took back the methamphetamine to deliver it himself. According to the record, Mr. Mojica was to pay Mr. Sandoval $500 for his part in the exchange.

Based on that evidence, the district court found that Mr. Mojica was an organizer, leader, manager, or supervisor of one or more participants in the offense pursuant to § 3B1.1(c), cmt. n.2. Consequently, Mr. Mojica received a two-level increase in his offense level and did not meet the requirements of §

3

5C1.2(a)(1–5) for "safety valve" relief.  To support its finding, the district court noted that Mr. Mojica planned and organized the exchange—through his communications with the CS—and that Mr. Mojica supervised Mr. Sandoval by following him to the hardware store and watching him attempt to find the buyer's car.  The district court also noted that Mr. Mojica was to receive a greater share of the profits from the sale than Mr. Sandoval.

On appeal, Mr. Mojica argues that the district court erred by enhancing his sentence under § 3B1.1(c) for having an organizing, leadership, or supervisory role in the offense and by denying "safety valve" relief under § 5C1.2(a)(4).

## II

We review a district court's factual finding, including a defendant's role in the offense, for clear error.  *See United States v. Mesa*, 247 F.3d 1165, 1168 (11th Cir. 2001).  In doing so, we accept the district court's credibility determination unless it is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).  We review the district court's application of the Sentencing Guidelines to the facts *de novo*.  *See Mesa*, 247 F.3d at 1168.

4

In relevant part, § 3B1.1(c) of the Sentencing Guidelines provides for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor" in the criminal offense. To qualify for this enhancement, the defendant "must have been the organizer, leader, manager, or supervisor of one or more participants." § 3B1.1 cmt. n.2. Factors a court should consider in determining whether the defendant was an organizer, leader, manager, or supervisor include: (1) "the exercise of decision making authority," (2) "the nature of participation in the commission of the offense," (3) "the recruitment of accomplices," (4) "the claimed right to a larger share of the fruits of the crime," (5) "the degree of participation in planning or organizing the offense," (6) "the nature and scope of the illegal activity," and (7) "the degree of control and authority exercised over others." § 3B1.1 cmt. n.4. All of the enumerated factors, however, need not be present for the district court to find that the defendant was an organizer, leader, manager, or supervisor. *See United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005).

As relevant here, § 5C1.2(a)(4) of the Sentencing Guidelines provides that a district court shall impose a sentence according to the applicable guidelines without regard to a statutory minimum if, among other things, "the defendant *is not* an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines . . . ." § 5C1.2(a)(4) (emphasis

5

added). This guideline is commonly called the "safety-valve" provision. *See, e.g.*, *United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000).

## III

Mr. Mojica argues that the district court erred because the government did not sufficiently prove that he acted in a leadership or supervisory capacity during his criminal offense. Mr. Mojica specifically argues that the district court should not have credited Mr. Sandoval's testimony that, at the initial restaurant meeting, noise from the restaurant's TV's prevented Mr. Sandoval from understanding the purpose of the meeting and the plan to exchange drugs.

The government responds that several facts in the record support the district court's finding that Mr. Mojica acted as an organizer, leader, or supervisor. First, Mr. Sandoval's testimony that Mr. Mojica arranged the sale was corroborated by Mr. Mojica's own admissions and a recorded phone call, which showed that Mr. Mojica was responsible for communicating with the CS and negotiating the price. Second, Mr. Mojica planned to supervise the exchange by "watching [Mr. Sandoval] to make sure [he] did the transaction right." D.E. 137 at 11. Third, when Mr. Sandoval could not find the buyer in the hardware store parking lot, Mr. Sandoval returned the methamphetamine to Mr. Mojica so that Mr. Mojica could complete the exchange himself.

We conclude that the district court did not clearly err in finding that Mr. Mojica acted as an organizer, leader, manager, or supervisor in the criminal offense. Evidence in the record, such as Mr. Sandoval's testimony, the recorded telephone conversation, and Mr. Mojica's own admissions support the district court's finding that Mr. Mojica planned the exchange, explained to Mr. Sandoval his role, supervised the exchange, and attempted to take the lead when Mr. Sandoval could not locate the buyer's car. Mr. Mojica points to nothing in the record to establish that this evidence was so "contrary to nature" or improbable that no reasonable factfinder could accept it. *See Ramirez-Chilel*, 289 F.3d at 749. Mr. Mojica may disagree with the court's interpretation of the evidence, but, "[w]here evidence has two possible interpretations, the district court's decision cannot be clearly erroneous." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998). Therefore, the district court did not clearly err by relying on Mr. Sandoval's testimony and other corroborative evidence to find that Mr. Mojica acted as an organizer, leader, or supervisor under the Sentencing Guidelines. And this finding precluded "safety-valve" relief under § 5C1.2(a)(4).

Mr. Mojica also argues that the district court improperly relied on its finding that Mr. Mojica "claimed right to a larger share of the fruits of the crime"——another factor used to establish that a defendant had a leadership role under the Guidelines. *See* § 3B1.1 cmt. n.4. Mr. Mojica asserts that the record does not

7

establish the cost of the methamphetamine sold, and therefore, there is no evidence to calculate the exact profit Mr. Mojica would have made on the sale. This argument is unpersuasive.

Evidence in the record, including a recorded telephone conversation, states that the CS was to pay Mr. Mojica $15,000 for the methamphetamine. At sentencing, the prosecutor and the district court judge also referenced the fact that "Mr. Sandoval was only getting $500 out of the $15,000 plus that was going to be paid for the methamphetamine." Mr. Mojica did not object to these references to the purchase price, and he submitted no evidence to contradict the $15,000 figure. Based on the large disparity between the purchase price and Mr. Sandoval's expected share, the district court had sufficient evidence to find that it was more likely than not that Mr. Mojica would have retained "a larger share of the fruits of the crime." § 3B1.1 cmt. n.4. *See Mesa*, 247 F.3d at 1168 (finding that the defendant claimed "a greater share of the profits," as he was "the source of the [drugs sold]").

Even if the district court could not determine that Mr. Mojica would receive a larger share of the profits without calculating his exact profit margin, that would not be dispositive. A district court is not required to rely on every factor in the comments to § 3B1.1 to find that the defendant acted as an organizer, leader, manager, or supervisor. *See Ramirez*, 426 F.3d at 1356. In this case, other

8

factors—such as Mr. Mojica organizing and supervising the exchange—sufficiently support the district court's finding.

## IV

Mr. Mojica's judgment and commitment order does contain a clerical error. "[I]t is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment." *United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006). And Rule 36 provides the mechanism to "correct a clerical error in a judgment, order, or other part of the record . . . ." Fed. R. Crim. P. 36. We apply Rule 36 to correct a clerical error in the judgement regardless of whether the error prejudiced the defendant. *See United States v. James*, 642 F.3d 1333, 1343 (11th Cir. 2011); *United States v. Portillo*, 363 F. 3d 1161, 1164 (11th Cir. 2004).

The judgment and commitment order states that Mr. Mojica was convicted of possession with intent to distribute 500 grams or more of a mixture of methamphetamine, "in violation of 21 U.S.C. §§ **814**(a)(1) and 841(b)(1)(A)." D.E. 118 at 1 (emphasis added). The correct statute, however, is 21 U.S.C. § 841(a)(1). We remand for the limited purpose of correcting that error.

**AFFIRMED in PART; VACATED AND REMANDED in PART.**

9